**George Wagner, Appellant, v. Robert A. Wagner et al., Appellee.**

**Gen. No. 5,080.**

1. TRUSTS—*spendthrift trust defined.* Spendthrift trusts are defined as those trusts which are created with a view to providing a fund for the maintenance of another and at the same time securing it against his own improvidence or incapacity for self-protection. The fact that the beneficiaries of such trust may be active, sober, frugal business men does not affect its character, nor is it essential to the creation of such a trust that the immunity of the fund from the claims of creditors be specifically provided for; if such a result is accomplished by the terms of the will, it is sufficient.

2. TRUSTS—*what not dry trust.* A trust which gives the income of property devised to trustees in trust without providing for the final disposition of such property, is not a dry trust if certain active duties with respect to the property in question are imposed upon the trustees.

3. WILLS—*when rule against perpetuities not violated.* Held, that the trusts created by the will in question in this case provided in effect for their termination on the deaths respectively of the several named beneficiaries, if such trusts were not sooner terminated by the exercise of the power of disposition conferred upon the trustees.

Bill to construe will. Appeal from the Circuit Court of Rock Island county; the Hon. W. H. GEST, Judge, presiding. Heard in this court at the October term, 1908. Affirmed. Opinion filed April 28, 1909.

J. T. & S. R. KENWORTHY, for appellant.

CONNELLY & CONNELLY and SEARLE & MARSHALL, for appellees.

MR. JUSTICE DIBELL delivered the opinion of the court.

George Wagner, now deceased, executed a will on June 3, 1901, and executed a first codicil on April 13, 1906, and executed a second codicil thereto on January 3, 1907. He died on January 10, 1907. Said will and codicils were duly admitted to probate. By the first paragraph of his will he directed his executors and trustees to take possession of all his estate, real, personal and mixed as soon after his decease as practicable. By the second paragraph thereof, he appointed his son, Robert A. Wagner, and his friend, Bernard D. Connelly, executors of his will and gave, devised and bequeathed to them all his estate in trust for the use and purposes thereinafter set forth. He directed that after the payment of his debts and funeral expenses and certain bequests, his executors and trustees should invest and keep invested all the residue of his personal estate in good securities, and keep rented all his real estate to the best advantage, and

out of the income therefrom pay all taxes, insurance, repairs and other legitimate demands against his estate. In the third paragraph he stated that he had made liberal advancements to his sons,' George Wagner, Jr., and Ernst Wagner, and to equalize these advancements he bequeathed to his son Robert (these three sons being his only children) sixty-two shares of stock in a certain bank, and five thousand dollars in cash, provided that if Robert died before the testator, Robert's wife should receive said sixty-two shares of stock and said five thousand dollars. By the fourth paragraph he gave to a son and daughter 'of his son George $2500 each, to be paid to them or to their guardian, if they were minors at the date of testator's death, and provided that the same "shall be deducted and taken from the share of my estate which my said son George may inherit in its final distribution." By the fifth paragraph he authorized his executors and trustees at any time to mortgage, pledge or sell the whole or any part of his real or personal estate, together or in parcels, on such terms and in such manner as they think fit, and gave them various other like powers, and directed them to use the proceeds in their discretion in the improvement of any other part of his property. By the sixth paragraph he provided that all stocks and bonds and other securities belonging to the testator at the time of his death should form a part of the trust created by his will, and empowered his executors and trustees to make investments and reinvestments of the trust money in such securities and in such real and personal property as they thought proper, and exonerated them from liability for any loss or depreciation. By the seventh paragraph he empowered his executors and trustees to pay or compromise any debts testator owed or which it might be claimed that he owed, and gave them other like powers. The eighth paragraph gave his executors and trustees power to determine questions arising in the administration of his will, and made their decision

binding on those interested thereunder. The ninth paragraph provided for the compensation of his executors and trustees. The tenth paragraph was as follows: "When the time for the closing up and final distribution of my estate arrives, it is my wish that all real, personal and mixed property of every kind remaining under the control and in the possession of my said executors and trustees shall be distributed among my said legal heirs in accordance with the laws of the State of Illinois, relating to descent." The eleventh and last paragraph of the original will provided for filling vacancies in the offices of executors and trustees, and investing the successors in trust with the same powers and authority given to the executors and trustees therein named.

The first codicil, after the preliminary words stating that it is a codicil, read as follows, omitting the witness clause and signature:

"Whereas, since the making of my said last will, I have converted the most of my estate into personalty, and,

"Whereas, many years of my life have been given to the upbuilding of the brewing industry of the city of Rock Island and the fruits of my long business career are largely represented by shares of capital stock of the Rock Island Brewing Company now in my name, and

"Whereas, it is my earnest wish and desire that as far as possible my personal interest and holdings in said Rock Island Brewing Company may be kept intact by my sons after my death,

"Now, Therefore, I do hereby give, devise, and bequeath unto Robert A. Wagner and Bernard D. Connelly, executors and trustees named in my said last will, one-third of my holdings in said Rock Island Brewing Company's stock in trust for the benefit of my son Ernst Wagner, and I also give, devise, and bequeath unto said Robert A. Wagner and Bernard D. Connelly executors and trustees named in my said will, one third of my holdings in said Rock Island Brewing Company's stock in trust for the benefit of

my son George Wagner, first deducting however, from the stock so to be held for the benefit of said George Wagner such portion of $5,000 as may be necessary to carry out the bequests under the fourth paragraph of my said last will.

"I direct my said trustees to pay to said Ernst Wagner the net income that may be derived from said Rock Island Brewing Company's stock, so held for his benefit, at such times and in such amounts as said trustees· in their discretion shall deem proper, and I direct that my said trustees shall pay to said George Wagner the net income that may be derived from said Rock Island Brewing Company's stock, so held for his benefit, at such times and in such amounts as said trustees in their discretion shall deem proper.

"If at any time, for the proper support and maintenance of either of my said sons, Ernst Wagner or George Wagner, or for any other purpose deemed expedient by my said trustees, it shall be advisable to pay unto said Ernst Wagner or said George Wagner any sums greater than the annual net income derived from said stock so held for their benefit, then I direct my said trustees to so pay such sums unto said Ernst Wagner and said George Wagner, and in order to raise additional sums I direct and empower my said trustees, in their discretion, to mortgage, pledge, or sell any portion of my said stock so held by them in trust for their benefit, and I direct my said trustees to so pay such sums unto Ernst Wagner and said George Wagner, and in order to raise such additional sums, I direct and empower my said trustees, in their discretion, to mortgage, pledge, or sell any portion of said stock so held by them in trust.

"I desire my said trustees to so administer the trusts herein created so that in their dealings with my said sons, Ernst Wagner and George Wagner, they shall, as nearly as possible, deal and treat with them as I would myself were I living, keeping in mind, however, my expressed desire to have the Wagner interests remain identified with the Rock Island Brewing Company as far as practicable. The trusts hereby created shall terminate in the discretion of the trustees or their successors.

"I give, devise, and bequeath the remaining one third of my holdings in the stock of the Rock Island Brewing Company to my said son Robert A. Wagner, to be his forever.

"In all other respects I hereby ratify and confirm my said last will and testament."

The second codicil contained a bequest of $5000 to Amelia Mattes in compensation for services.

The case now before the court arose upon an amended bill as amended, filed by George Wagner against his two brothers and the two executors and trustees and his two children and Amelia Mattes, now Stenger, for a construction of the first codicil, and to have it determined that thereby George took at once the one-third of the holdings of the Rock Island Brewing Company's stock, and that his brother Ernst also become the absolute owner of the other one-third, and that the court would declare the trust closed and turn said property over to George and Ernst, respectively, and also for a partition of certain real estate of which it was alleged the testator died seized. Said amended bill as amended will hereinafter be called the bill. Amelia Mattes answered the bill, admitting its allegations, except that she denied the allegations of the bill that the legacy to her had been paid. Ernst Wagner was defaulted; a guardian *ad litem* filed an answer for the two children of George Wagner; Robert A. Wagner in his own right, and he and Connelly as executors and trustees, demurred to the bill. It was stipulated in open court that said demurrer should apply to and be respectively sustained or overruled as to the several parts of the bill in the same manner and to the same extent as if specially directed to such several and distinct parts. The cause was submitted upon these pleadings.

The court held that the tenth clause of the original will was void for remoteness, and obnoxious to the rules against perpetuity, and that the demurrer should be overruled as to so much of the bill as sought parti-

tion of the real estate or distribution of the personal estate under said tenth clause of the original will, and decreed partition of the real estate. The court held against the complainant as to the first codicil, and held that it created a valid trust, to terminate, respectively, at the time of the respective deaths of George and Ernst, if not sooner terminated by voluntary act of the trustees in the exercise of the discretion given them by the testator, and that so much of the complainant's bill as sought to have the first codicil declared null and void should be dismissed; and it was thereby dismissed. Complainant elected to abide by his bill so far as the demurrer was sustained thereto, and appealed from that part of the decree to this court, and perfected that appeal.

It is contended by appellant that the sole object of the testator in making his first codicil was to keep his brewery interests intact, and therefore the trust was intended to continue indefinitely beyond the lifetime of his sons George and Ernst, and hence the provision establishing a trust was void because it violated the rule against perpetuities. The preamble to the first codicil does show that since the testator made his original will he had converted most of his estate into personalty; that he had given many years of his life to the building up of the brewing industry in the city of Rock Island; that the fruits of his business career were largely represented by the shares of capital stock of the Rock Island Brewing Company standing in his name; and that he desired that as far as possible his holdings in that stock should be kept intact by his sons after his death. He does not, however, say that the sole purpose or the main purpose of making that codicil was to cause those holdings to be held intact. That that was not his sole or objective purpose is obvious from several considerations. He therein gives Robert one-third of that stock absolutely, thereby enabling Robert at any time to prevent the testator's stock from being held intact, and enabling Robert at

any time to sell and dispose of the same, and enabling Robert's creditors at any time to seize the same. Again, he directed his trustees to pay the net income from the other two-thirds of the stock to Ernst and George, respectively, at such times and in such amounts as the trustees should deem proper. If his sole object had been to keep his brewery interests, or even two-thirds thereof, intact, he would not naturally have put any limitation upon the payment of the income to these sons. Still further, he authorized his trustees to sell, mortgage or pledge any part of the stock held by them in trust for George and Ernst, for the proper support and maintenance of George and Ernst, or for any other purpose deemed expedient by his trustees. This gave the trustees full power to dispose of the stock entirely at any time, whenever they thought that the proper support and maintenance of these sons, or any other unforeseen exigencies, made it seem expedient to the trustees to do so in caring for George and Ernst. These directions seem to manifest clearly that the purpose of the codicil was not to preserve his brewery interests intact, but to provide for the welfare of his children, and to secure to George and Ernst a sure support and a provision against the unforeseen exigencies of life. If its purpose had been to keep his brewery interests intact, it cannot be supposed that he would have authorized his trustees to dissipate and scatter those interests whenever they thought proper.

The bill averred that each of the three sons of the testator was and had been for many years prior to the death of the testator *sui juris* and *compos mentis*, and active, sober, frugal and industrious business man. It is argued that the demurrer admitted these allegations, and therefore the trust created by the first codicil in behalf of George and Ernst cannot be a spendthrift trust. The term "spendthrift" as used in that connection merely means one in whose behalf or for whose support a fund is provided in such a way as to be removed from the control and disposition of the bene-

ficiary, and from liability for his individual debts. A spendthrift trust is defined to be a term applied to those trusts that are created with a view of providing a fund for the maintenance of another, and at the same time securing it against his own improvidence or incapacity for self-protection. 26 A. & E. Encyc. of Law, 2nd ed. 138. By the trust created by this first codicil, no part of the brewery stock directed to be held for the benefit of Ernst Wagner and George Wagner, respectively, was ever to be delivered to them or the proceeds paid to them unless the trustees deemed it advisable, for their proper support and maintenance, or for any other purpose. The income also was not to be paid to George and Ernst at stated times or in stated amounts, but it was to be paid at such times and in such amounts as the trustees in their discretion deemed proper. It is obvious that the interests so created could not be reached by the creditors of George and Ernst. It was held in Bennett v. Bennett, 217 Ill. 434, that it was not necessary that an instrument creating a spendthrift trust should contain an express declaration that the interest of the *cestui que trust* should be beyond the reach of his creditors, if that intention appeared from all parts of the instrument construed together in the light of the circumstances. It was also held that in that case the fact that a trustee was appointed and vested with the estate, and that the beneficiary was given the income only, was a circumstance from which the intention of the testator to create a spendthrift trust might be inferred. It is argued by appellant against this position that where property is given to a trustee and the income is to be paid to another, and the will makes no final disposition of the property, the gift of the income is a gift of the body of the estate, and the trust is a dry trust, and the person to whom the income is given takes the whole estate and title of the trust property at once. It is argued that under this principle and the authorities cited in its support, this is a dry trust. This posi-

tion overlooks the duties imposed upon the trustees.
They are to hold this stock. They are to deduct from
the stock held for the benefit of George such portion
of the five thousand dollars as may be necessary to
carry out the bequests to the children of George, under
the fourth paragraph of the original will. The trustees
are to receive the income from this stock. They are
not to pay that income at once upon its receipt to
George and Ernst, respectively; but they are to hold
the income and exercise their discretion as to the times
when and the amounts which shall be paid to these
two sons. They are to pay Ernst and George the
"net" income, implying that they will first pay taxes
and perhaps other charges therefrom. They are au-
thorized to determine whether at any time it is advis-
able for the proper support and maintenance of said
sons, or whether for any other reason it is expedient
that a greater sum than the annual net income be paid
to Ernst and George, and if they so conclude, they
then are authorized to mortgage or pledge or sell any
portion of the stock. They are also authorized to so
administer this trust in their dealings with Ernst and
George that they shall as nearly as possible deal and
treat with Ernst and George as the testator himself
would do if he were living. They are also authorized
in their discretion to terminate the trust. These are
positive duties enjoined upon the trustees, and the
performance of these duties requires the trustees to
hold the stock, and therefore forbids the application of
the rule that the gift of the income to the sons was the
gift to them of the title to the stock itself. It seems
obvious that the testator believed that the support
and maintenance of George and Ernst would not be
assured if they were each given the possession and
control of one-third of this stock upon the death of
the testator, but that such support would be better
assured if the stock was placed in the hands of these
trustees with discretionary powers as to payment of
the net income, and authority to use the principal in

case of need, with power in the trustees to give them the absolute control of the proceeds of the stock when in the discretion of the trustees they felt justified in so doing. There must have been some reason personal to George and Ernst, respectively, why these provisions were made. The testator in the third paragraph of his original will stated that he had already made liberal advances to George and Ernst. We are of opinion that the court below was justified in concluding that this first codicil created a spendthrift trust for the benefit of George and Ernst, within the meaning of that term as used in the law.

It is argued that no time is provided for the termination of this trust, and therefore it is void. We think this position unsound. The trustees were given no duties to perform after the death of George and Ernst. As to each one-third of the stock the duties of the trustees ended when the beneficiary of that third died. It is said in Kohtz v. Eldred, 208 Ill. 60, that "where the evident purpose of a trust is the accomplishment of a particular object, the trust will terminate so soon as that object has been accomplished, and the fact that a fee is given to the trustee does not show the testator's intention that the trust estate shall continue after the active duties connected with the trust have been accomplished." We regard it as clear that the court below correctly held that the trusts terminated, respectively, at the time of the respective deaths of the *cestuis que trust*, if not sooner terminated by the voluntary act of the trustees in the exercise of the discretion given them by the testator. The trust therefore did not violate the rule against perpetuities.

But appellant contends that it is uncertain what becomes of the title to this two-thirds of the brewery stock, upon the death of George and Ernst, and insists that the court should have determined that question; and also seems to combat each possible theory as to the meaning of the will on that subject, and to claim that because that subject is left indefinite the trust

created by the codicil is void. We do not suppose that question is in doubt when the whole codicil is considered. The stock was given to the trustees in trust for the benefit of Ernst Wagner and George Wagner, respectively, and the trustees had authority, if they deemed it advisable and proper, to sell and dispose of any part of the stock and pay the sums derived therefrom to Ernst and George, even to the exhaustion of the entire sum received from the sale of all the stock. But that question does not concern the present complainant. When the court decided that the trust created by the codicil was not void, and that George did not take the body of the estate, but only the income, at such time and in such amounts as the trustees saw fit to pay it to him, that disposed of all the interest of George in this litigation, except as to the real estate, which is not brought before us by this appeal. When George is deceased and the trust as to that one-third of the stock ends, it may be that there will be no dispute or litigation upon the question who takes that stock. If there should be any occasion for litigation upon that subject, there may be parties interested in that litigation who are not before the court by this bill. It is sufficient for the purposes of this litigation that the trust will end as to the stock held for the benefit of George when he dies, and the trust as to the stock held for the benefit of Ernst will terminate at his death, and that said stock will then be distributed in such manner as this will, when properly construed, provides. Or if it should then be held that the will makes no provision on that subject, it will then be distributed as intestate estate of the testator. The court properly declined to determine that question by this decree. So much of the decree as is appealed from is therefore affirmed.

*Affirmed.*